## CITY OF INDEPENDENCE v. CLEVELAND, Appellant.

### Division Two, March 11, 1902.

1. **Cities: POWERS.** A city can exercise the following powers and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the municipal corporation—not simply convenient, but indispensable.

2. **Laundries: LICENSE.** The statute of this State does not authorize cities of the third class to levy a license tax on steam laundries. Such authority is not expressed in the statute, nor can it be implied from the language used.

3. ——: ——: **LAUNDRY AGENTS.** Where a city has no authority to impose a license on steam laundries doing business therein, it has no authority to impose a license tax on an agent of any such steam laundry doing business therein, nor can it fine him for undertaking therein to do the business of an agent of a laundry located elsewhere.

4. **Appellate Jurisdiction: CONSTITUTIONAL QUESTION: RAISED BY MOTION FOR NEW TRIAL.** *Held,* by BURGESS, J., with whom SHERWOOD, P. J., and GANTT, J., do not concur, that the Supreme Court does not acquire jurisdiction of an appeal by the raising for the first time in a motion for a new trial, of the question of the constitutionality of an ordinance under which appellant was convicted for carrying on a business without a license.

Appeal from Jackson Criminal Court.—*Hon. Samuel Davis,* Special Judge.

REVERSED.

*Wollman, Solomon & Cooper* and *Flournoy & Flournoy* for appellant.

(1) The ordinance in question, in that it does not put any license tax on steam laundries located in Independence, or upon agents of such laundries, is in violation of section 3 of article 10 of the Constitution of Missouri. State v. North & Scott, 27 Mo. 464; St. Louis v. Spiegel, 90 Mo. 587; Kansas City v. Grush, 151 Mo. 128. (2) The ordinance is void because no power is given to the city of Independence by its charter to put a license tax on agents of steam laundries. Laws 1893, p. 89, sec. 107; Sec. 1900, R. S. 1889; Trenton v. Clayton, 50 Mo. App. 535; Kansas City v. Lorber, 64 Mo. App. 605; Joplin v. Leckie, 78 Mo. App. 8; Kansas City v. Grush, supra.

*Sam W. Hilt* for respondent.

(1) The ordinance here in question is clearly within the limits of the Constitution of Missouri. Sec. 3, art. 10, Constitution. (2) The council is authorized by charter to tax agents. Sec. 1506, R. S. 1889; Sec. 107, Laws 1893, p. 89. (3) The constitutionality and legality of such an ordinance has received the stamp and approval of this court. St. Louis v. Bowler, 94 Mo. 630.

BURGESS, J.—Defendant was convicted in the police court of Independence, Jackson county, Missouri, a city of the third class, and fined in the sum of fifty dollars, for unlawfully conducting in said city an agency for a steam laundry without first having a license therefor, as required by the ordinances of said city. He appealed to the criminal court of said county, where, upon a trial *de novo* before the court, a jury being waived, he was again convicted, and a fine assessed against him in the sum of thirty dollars. After unsuccessful motion for new trial he appeals to this court.

The ordinance upon which this prosecution is based is as follows:

Vol 167 mo—25

"*An ordinance to license, tax and regulate the different classes of business, employments, occupations, agencies, public halls and amusements in the City of Independence, Missouri.*

"Section 1. No person, firm, company, corporation or association, without first having obtained a license therefor, shall, in the city of Independence, engage, carry on or exercise any of the following classes of business, occupations, employments, agencies or amusements, and the charges for such license shall be as follows. . . . . Agents of steam laundries fifteen dollars per year. . . . .

"Sec. 7. Any person in this city who shall violate any of the provisions of this ordinance shall be deemed guilty of a misdemeanor and, upon conviction, shall be fined not less than five dollars, nor more than one hundred dollars."

It was admitted that M. J. Cleveland, the appellant, was the agent of Woolf Brothers Steam Laundry, located in Kansas City, Missouri, and had been such agent since the date of the ordinance in question, and that there were and had been during said time two steam laundries located in said city of Independence.

The evidence showed that defendant had never taken out a license to act as the agent for a steam laundry; that the ordinance introduced by respondent was the only ordinance of the city relative to laundries, and that there was no ordinance of the city putting a license tax on laundries located at Independence; that there was no attempt on the part of the city to levy any tax on the agents of laundries located at Independence.

There are but two points presented by this appeal, both of which are raised by the motion for a new trial and in no other way. The first challenges the power of the city of Independence by its charter to impose a license tax on agents of steam laundries. The argument of defendant is, as we understand it, that the city has no power to levy a license tax upon

steam laundries themselves, and is therefore without authority to impose such a tax upon their agents.

The only authority which the city of Independence has to levy and collect a license tax upon agents, trades and occupations is to be found in section 107, Laws 1893, p. 89.    It reads as follows:

"The council shall have power and authority to levy and collect a license tax on beer depots or storerooms, auctioneers, druggists, hawkers, peddlers, banks, brokers, pawn-brokers, merchants of all kinds, grocers, confectioners, restaurants, butchers, taverns, hotels, public boarding-houses, dramshops, saloons, liquor-sellers, billiard and pool tables and other gaming tables, bowling alleys, hay scales, lumber dealers, livery-stable keepers, real estate agents, loan companies, loan agents, public buildings, public halls, opera houses, public grounds, concerts, photographists, bill posters, artists, *agents,* porters, runners, drummers, public lecturers, public meetings, circuses and shows, for parades and exhibitions, or both, horse and cattle dealers, patent-right dealers, stock yards, wagon yards, inspectors, gaugers, mercantile agents, insurance companies, insurance agents, manufacturing and other corporations or institutions, street railroad cars, hackney carriages, omnibuses, carts, drays, transfer and job wagons, ice wagons and all other vehicles, traveling and auction stores, and all other businesses, trades and avocations whatever, and fix the rate of carriage of persons and wagonage, drayage and cartage of property; and to license, tax, regulate or suppress ordinaries, money brokers, money changers, intelligence and employment offices and agencies, public masquerades, balls, street exhibitions, dance houses, fortune tellers, pistol galleries, corn doctors, private venereal hospitals, museums, menageries, equestrian performances, horoscopic views, telescopic views, lung testers, muscle developers, magnifying glasses, ten pin alleys, ball alleys, billiard tables, pool or other tables, theatrical or other exhibitions, boxing and sparring exhibitions, shows and amusements, tippling houses,

gift enterprises and sales of unclaimed goods by express companies or common carriers; to license, tax and regulate, hackmen, draymen, omnibus drivers, porters and all others pursuing like occupations with or without vehicles, and to prescribe their compensation; and to regulate, license and restrain runners for steamboats, cars, stages and public houses; and to license ferries, and to regulate the same and the landing thereof within the limits of the city." [Sec. 1506, R. S. 1889.]

And we have looked in vain for any authority in that section which authorizes cities of the third class to levy a license tax on steam laundries. It is clearly not so expressed, nor do we think any such authority can be implied from the language employed. In 1 Dillon's Municipal Corporations (4 Ed.), sec. 89, it is said:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: first, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. [Williams v. Davidson, 43 Tex. 33, and authorities cited.] But if there were any fairly reasonable doubt as to the existence of any such power it must be resolved against the city." [Trenton v. Clayton, 50 Mo. App. 535; Kansas City v. Lorber, 64 Mo. App. 604; City of Joplin v. Leckie, 78 Mo. App. 8; Brenham v. Water Company, 67 Tex. 542; Kirkham v. Russell, 76 Va. 956.]

We do not, however, think there is any doubt as to the want of authority in the city under its charter to license steam laundries doing business in said city. Could, then, the defendant be required by ordinance to take out a license as agent for a business which the city had no authority to tax, before engaging in such business? We think not. To require him

to do so would be imposing upon his principal indirectly a burden which the city could not impose directly, and this would be a clear evasion of the law.

If the city had no authority to require steam laundries doing business within its limits to pay a license tax, it is somewhat difficult to see by what authority it could compel their agents to do so. Defendant as agent was simply the representative of the principal, and if no authority existed upon the part of the city to require a license or occupation tax of his principal before engaging in the laundry business in the city, it must logically follow that none could be required of the agent.

The next question is as to the constitutionality of the ordinance which defendant claims is in conflict with the provisions of section three of article 10 of the Constitution of this State, but from what we have said, that question is eliminated from the case on this appeal, if in fact it was ever in it. Speaking for myself, I do not think this question is properly presented by this record so as to give the Supreme Court jurisdiction of this appeal, and that the cause should be transferred to the Kansas City Court of Appeals, but I defer to the opinion of my associates on that question.

For these intimations the judgment is reversed and the defendant discharged. All concur.